B. C. McCue and Della A. McCue, *Appellees*, v. Deerfield Gas Production Company, a corporation, Kearney Gas Production Company, a corporation, and Kansas-Nebraska Natural Gas Company, Inc., a corporation, *Appellants*.

No. 38,684

L. F. Roderick and Florence R. Roderick, *Appellees*, v. Deerfield Gas Production Company, a corporation, Kearney Gas Production Company, a corporation, and Kansas-Nebraska Natural Gas Company, Inc., a corporation, *Appellants*.

No. 38,685

Ralph E. Thorpe and Zera Thorpe, *Appellees*, v. Deerfield Gas Production Company, a corporation, Kearney Gas Production Company, a corporation, and Kansas-Nebraska Natural Gas Company, Inc., a corporation, *Appellants*.

(245 P. 2d 1191)

Opinion filed July 3, 1952.

W. R. Martin, of Wichita, argued the cause, and James D. Conway, of Hastings, Nebraska, George B. Collins, C. L. Williams, Oliver H. Hughes, K. W. Pringle, Jr., all of Wichita, and Logan N. Green, Roland H. Tate, and Daniel R. Hopkins, all of Garden City, were with him on the briefs for the appellant.

*Dale M. Stucky,* of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Donald R. Newkirk, George W. Holland,* all of Wichita, and *A. E. Kramer* and *Bernard E. Nordling,* both of Hugoton, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: These three cases present the same legal question. They were consolidated for argument in the court below and are consolidated here for the purpose of abstract and briefs. However, the abstract is set out only in case No. 38,684. The appeal is by the last defendant named only from an order overruling its special demurrer to paragraph 6 of the petition and from an order overruling its general demurrer to the petition. While the petition might be abbreviated in part we think best to set it out in full. It reads:

"L. F. Roderick and Florence R. Roderick, plaintiffs, for cause of action against the defendants, and each of them, alleges:

"1. Plaintiffs are husband and wife, residents of Kearny County, Kansas, and their correct post office address is Lakin, Kansas. The defendants, Deerfield Gas Production Company (hereinafter referred to as Deerfield), and Kearney Gas Production Company (hereinafter referred to as Kearney), are corporations existing under and by virtue of the laws of the State of Delaware, and are authorized to do business and are doing business in the State of Kansas. The defendant, Kansas-Nebraska Natural Gas Company, Inc., (hereinafter referred to as Kansas-Nebraska), is a corporation existing under and by virtue of the laws of the State of Kansas. Each of the defendant corporations owns property situated in Kearny County, Kansas.

"2. Plaintiffs are the fee owners of the following described land located in Kearny County, Kansas:

"The West Half of Section 25, Township 25 South, Range 36 West of the Sixth Principal Meridian, containing 320 acres, more or less.

"3. The defendants Deerfield and Kearney are the owners of an oil and gas lease prepared by their predecessor in title, A. L. Jones, and executed by the plaintiffs as lessors, covering the above described real property, copy of which lease is attached hereto as Exhibit 'A' and made a part hereof. By reason of the allegations set forth in paragraph 6 hereof, the defendant Kansas-Nebraska has an interest in such lease.

"4. On or about September 11, 1946, the Fin-Ker Oil and Gas Production Company (hereinafter referred to as Fin-Ker), was the owner by assignment of such lease. At or about that time plaintiffs and Fin-Ker entered into an agreement modifying said lease. Said modification agreement in substance gave the lessee, Fin-Ker, the right to consolidate its leasehold interest in the land above described with other gas leasehold estates owned by it to form a 640-acre drilling and operating unit for the production of natural gas, consisting of all of Section 25, Township 25 South, Range 36 West of the Sixth Principal Meridian, Kearny County, Kansas. On or about February 18, 1947, Fin-Ker as lessee completed a commercial gas well located on the land of the

plaintiffs above described and began producing gas therefrom in commercial quantities. A copy of said unit operating agreement is attached hereto as Exhibit 'B' and made a part hereof.

"5. The provisions of said lease with reference to royalty payments on gas wells is as follows:

"2nd. To pay lessor for gas from each well where gas only is found, the equal one-eighth (⅛) of the gross proceeds at the prevailing market rate, for all gas used off the premises, . . ."

"Fin-Ker as lessee took gas produced from said well into its possession and used and marketed such gas off the leased premises from the time of completion of such well until on or about January 1, 1950, at which time the defendants Kearney and Deerfield acquired the title of Fin-Ker to said lease and the defendant Kansas-Nebraska acquired the contractual rights with respect thereto set out in paragraph 6 hereof. The defendants Kearney, Deerfield and Kansas-Nebraska have since that time taken the gas produced from said well into their possession and have used said gas off the leased premises.

"6. At all times since the acquisition of said lease by the defendants Deerfield and Kearney, the defendant Kansas-Nebraska has operated, maintained and repaired said well, well lines, appurtenances and gathering lines under a contractual arrangement with Deerfield and Kearney. The defendants have taken the gas produced from said well and have used said gas off the leased premises and the defendant, Kansas-Nebraska, has sent monthly checks purporting to be payments of royalty under said leases to the plaintiffs herein as hereinafter set forth. Plaintiffs are informed and believe and therefore allege that under and pursuant to such contractual arrangements made by, between and among the defendants, Kansas-Nebraska has undertaken to make payment of royalty under such leases to the plaintiffs herein, that Kansas-Nebraska has acquired an interest in said lease and well, and that the defendant, Kansas-Nebraska, is legally obligated to make such payments to the plaintiffs, plaintiffs being the third-party beneficiaries of such agreements, and that by reason of such agreements, Kansas-Nebraska has become primarily liable to the plaintiffs for such royalty payments and that Kearney and Deerfield are secondarily liable for the payment thereof.

"7. Although the defendant Kansas-Nebraska has reported to the plaintiffs that the gas runs from said well from and including January, 1950, to and including February, 1951, totaled approximately 249,182 thousand cubic feet of gas (MCF), plaintiffs are informed and believe and therefore allege that the defendants used and marketed during said period of time approximately 279,084 MCF of gas from said well. Plaintiffs allege that the difference in the volume of gas so reported to plaintiffs as having been produced and marketed by Kansas-Nebraska from said well and the volume of gas actually used and marketed by said defendant from said well results from the differing pressure bases of measurement used by the defendant Kansas-Nebraska in computing such volumes. Although the volume of gas used and marketed by the defendant Kansas-Nebraska is measured by it on a pressure basis of approximately 14.6 to 14.9 pounds per square inch, or less, and the proceeds to the defendant Kansas-Nebraska received from the sale and marketing thereof are computed thereon, the defendant Kansas-Nebraska has reported a volume of gas produced from said well on a pressure basis of 16.4 pounds per square inch. The differ-

ence in the amounts of gas obtained by the use of such differing pressure bases of measurement is approximately 12%.

"8. Gas produced from said well, in its natural state, contains hydro-carbons, gasoline and other liquefiable fractions and inert matter as integral elements thereof, as well as residual gas, such as that commonly consumed at the ultimate domestic burner tip. Such hydro-carbons, gasoline, liquefiable fractions and inert matter as an integral part of said gas greatly enhance the value of said gas at said well and elsewhere. There is approximately three-fourths of one gallon of recoverable liquefiable fractions in each one thousand cubic feet of gas so marketed and used by the defendants, measured on a pressure basis of 16.4 pounds per square inch. Plaintiffs are informed and believe and therefore allege that the defendants greatly benefit from such enhanced value, and that the defendant, Kansas-Nebraska, derives proceeds from the sale of such liquefiable fractions and inert content as well as from the sale of residual gas after extraction of said fractions and content.

"9. By virtue of the provisions of the lease and the consolidation of the leaseholds aforesaid and by virtue of the acts of the defendants, and each of them, in producing said gas and using the gas off the leased premises, including the hydro-carbons, gasoline, liquefiable fractions and inert contents which are an integral part thereof, plaintiffs are entitled to royalties of a full ½ of the ⅛ royalty from said well, that is to say, plaintiffs are entitled to a full 1/16 of the gross proceeds at the prevailing market rate, or, there being no open market for such gas at the well, and there being no gross proceeds computed at the prevailing market rate and there being no prevailing market rate for the sale of gas at such well, plaintiffs are entitled to a full 1/16 of its fair and reasonable value at the well, including the value of all the elements constituting such well-head gas. Plaintiffs allege that there is no open market and that there is no market rate or price for said gas at said well or in the vicinity thereof, and that there is no prevailing rate for sale of gas from said well, and that the fair and reasonable value of said gas at the well-head is now and has at all times relevant herein been at least 14½¢ per 1,000 cubic feet, and that the total fair and reasonable value of such gas taken from such well, from and including January, 1950, to and including February, 1951, is $40,467.18.

"10. Plaintiffs allege that under such lease agreement the defendants became indebted to plaintiffs in a total amount equal to 1/16 of such fair and reasonable value of said gas at said well, or the sum of $2,529.19 as royalty payments by reason of the production and use of said gas off the leased premises from and including the month of January, 1950, to and including the month of February, 1951. The defendant Kansas-Nebraska has each month sent to plaintiffs checks purporting to be royalty payments under said lease for said period of time, which amounts were computed on the basis of the assumption that the gross proceeds at the prevailing market rate or the fair and reasonable value of said gas at said well amounted to only 6¢ per thousand cubic feet during said period of time, measured on a pressure basis of 16.4 pounds per square inch. Such payments over such period of time amounted to $934.34.

"11. On or about March 20, 1951, the defendant, Kansas-Nebraska sent to the plaintiffs the additional amount of $311.48 representing the amount stated by Kansas-Nebraska to be due and owing to the plaintiffs under the provisions

of the February 21, 1951 order of the State Corporation Commission of Kansas, in its Docket No. 35,154-C, covering additional royalty payments for gas used by said defendants from said well during the period of January 1, 1950, to February 28, 1951.

"12. Defendants, and each of them, have failed and refused to pay the plaintiffs the full amount of the royalties which became due as aforesaid on said leases and are now indebted to the plaintiffs in the unpaid balance of $1,283.27.

"WHEREFORE, plaintiffs pray for judgment against the defendants, and each of them in the amount of $1,283.27 together with interest from the time each of the monthly payments under said lease should have been made under and pursuant to the terms of such lease, and for the costs of this action."

To this petition Kansas-Nebraska filed the following:

### "MOTION TO STRIKE, TO MAKE MORE DEFI- NITE AND CERTAIN AND TO SEPARATELY STATE CAUSES OF ACTION

"COMES Now the defendant, Kansas-Nebraska Natural Gas Company, Inc., and moves the court for an order requiring the plaintiffs to make their petition more definite and certain and to strike therefrom the following particulars:

"1. In paragraph 6 of said petition, to strike therefrom the conclusion of the plaintiffs as to the contractual relationship existing between this moving defendant and the defendants Kearney Gas Production Company and Deerfield Gas Production Company, and substitute in lieu thereof the actual contract between said defendants.

"2. To make paragraph 7 of said petition more definite and certain by setting forth the place or places where it is contended:

"(a) That this moving defendant measures gas on the pressure basis of approximately 14.6 to 14.9 pounds per square inch or less; and

"(b) That this answering defendant measures gas on a pressure basis of 16.4 pounds per square inch.

"3. To strike all of paragraph 8 for the reason that the same fails to state facts tending to support any claim or cause of action in favor of the plaintiff and against this moving defendant.

"4. To strike that portion of paragraph 9 commencing with the words 'by virtue of the provisions of the lease' and ending with the words 'which are an integral part thereof,' for the reason that said language fails to set forth any fact or facts tending to support any claim or cause of action in favor of the plaintiffs and against this moving defendant.

"5. By setting forth the order of the commission relied upon as plead by the plaintiffs in paragraph 11 of this petition.

"Further, this defendant moves the court for an order directing the plaintiffs herein to state as a separate and independent cause of action, all that part of the petition setting forth facts in support of the claim for recovery by reason of the use, by this answering defendant, of two differing pressure bases of gas measurement."

This motion was overruled; whereupon Kansas-Nebraska filed its demurrers, which read:

"*Special Demurrer.* Comes now the defendant, Kansas-Nebraska Natural Gas Company, Inc., and specially demurs to plaintiffs' petition filed herein for the reason that the same is not framed upon a distinct and definite theory upon which theory the facts alleged state a good cause of action in favor of the plaintiffs and against this defendant.

"*General Demurrer.* Comes now the ·defendant, Kansas-Nebraska Natural Gas Company, Inc., and demurs to plaintiffs' petition filed herein for the reason that the same does not state a cause of action in favor of the plaintiffs and against this defendant."  ·

These demurrers were considered by the court and overruled. The appeal is from those rulings.

In this court counsel for appellant express the view that the petition should be strictly construed against the pleaders. Counsel for the appellees argue to the contrary. We think the point is not very material and we shall not labor it. It is true appellant's motion as it pertains to paragraph 6 of the petition is to strike therefrom the conclusion of plaintiffs as to the contractual relations between the parties and substitute in lieu thereof the actual contract between defendants. Counsel for appellees say this assumes there is but one contract and· that it is in writing, which assumption is not justified from the language of the petition. This argument indicates that plaintiffs may be relying upon one or several contracts, one or more of which may be in writing and the other, or others, may be oral. This makes the pleading more confusing than ever and necessarily causes defendant and the court to wonder what contract, or contracts, plaintiffs are relying upon. Whatever they are, plaintiffs' conclusion is that they are *third party beneficiaries. Obviously, plaintiffs' conclusion that they* are third party beneficiaries cannot be determined by appellant from the facts alleged, and what is more important, the court cannot determine those facts. It seems clear plaintiffs have not stated their cause of action in plain and concise language as required by the code. (G. S. 1949, 60-704. *Second.*) The special demurrer to paragraph 6 or the petition should have been sustained.

The general demurrer to the petition, upon the ground that it does not state facts sufficient to constitute a cause of action, presents other and very important questions. From the petition it appears plaintiffs complain of two things: First, that defendants purchase the gas measured on a wellhead pressure of 16.4 pounds and that it is marketed by appellant on a pressure basis of 14.6 to 14.9 pounds per square inch or less. From other cases we have had before us it appears that the State Corporation Commission,

by an appropriate order, has fixed the value of gas produced from wells to be measured upon the basis of 16.4 pounds per square inch, and for this reason we should take judicial notice of that fact. Passing that, however, if plaintiffs sell the gas at the well-head, measured upon the basis either agreed upon between the parties or fixed by the State Corporation Commission, it is difficult to see that plaintiffs are concerned with the basis by which appellant measures the gas when it sells it.

The other point which forms the basis for plaintiffs' claim appears to arise in this way: Prior to the order of the State Corporation Commission fixing a minimum price at the wellhead of 8 cents per thousand cubic feet for gas produced from the wells, plaintiffs, under the lease, received only 6 cents per thousand cubic feet. After the order of the State Corporation Commission was made plaintiffs have been receiving 8 cents per thousand cubic feet. Plaintiffs contend this is not enough because gas as it comes from the well contains gasoline, lampblack, and other substances which may be extracted and sold separately; that the gas is really worth 14½ cents per thousand cubic feet at the wellhead, and that plaintiffs should be paid that amount. Plaintiffs may be entirely correct in their estimate of the real value of the gas at the wellhead, but this is a suit by the lessors against the lessee, or one who stands in the stead of the lessee, for a proper method of having that additional price determined. We do recall that in the testimony taken in the case of *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission,* 169 Kan. 722, 222 P. 2d 704; 170 Kan. 341, 225 P. 2d 1054, some of the witnesses testified the gas was worth as much as 20 cents per thousand cubic feet at the wellhead. The well in question here apparently is in a part of the large Hugoton gas field in southwest Kansas in which there are scores, perhaps thousands, of separate leases. The thought intrudes: Can it be possible that the lessor in each of those leases can maintain a separate action against the lessee for what the lessor may deem to be the proper price for the gas at the wellhead? The State Corporation Commission has fixed a minimum price of 8 cents per thousand cubic feet. These plaintiffs say that it is worth 14½ cents. Other lessors might fix the value above 8 cents, at something different than plaintiffs here place it. Perhaps this entire matter of what is a reasonable price above the minimum of 8 cents at the wellhead, where the gas does contain the extra ele-

ments mentioned here, is an appropriate one to be presented to the State Corporation Commission. However, we are not required to determine that matter in this case. Indeed, the record before us would not justify us in doing so. We are only required to determine whether this petition states a cause of action against the appellant, the Kansas-Nebraska Natural Gas Company, Inc. The present owners of the lease are Deerfield and Kearney. The pertinent allegation against Kansas-Nebraska is that under some indefinite contractual arrangements, of which plaintiffs are third party beneficiaries, Kansas-Nebraska is liable. We are confident the petition states no cause of action against Kansas-Nebraska. The orders of the trial court overruling appellant's special demurrer to paragraph 6 of the petition and its general demurrer to the petition should be reversed with directions that those demurrers be sustained.

It is so ordered.